NEW ENGLAND R. CO. v. CARNEGIE STEEL CO., Limited.

(Circuit Court of Appeals, First Circuit. May 22, 1896.)

No. 173.

1. RAILROAD COMPANIES—APPOINTMENT OF RECEIVERS—POWERS AND DUTIES
   The appointment of railroad receivers under a bill by a stockholder and bondholder, which makes no mortgagee a party, and which alleges insolvency, and prays merely that the system may be protected from its creditors, and held intact, may, in the absence of formal objection, be presumed to be for the common interest; but, until the mortgage bondholders intervene, such receivers stand practically for the corporation itself, with all its rights and powers, subject to such limitations and directions as the court may give.

2. SAME—POWER OF COURTS—PAYMENT OF PRIOR EXPENSES.
   It is competent for the court, on appointing such receivers under such circumstances, to authorize them, in their discretion, from time to time, out of the earnings coming into their hands, to pay the current pay rolls, vouchers, and supply accounts incurred in the operation of the road prior to their appointment, and to apply funds coming into their hands as the corporation might have applied them. Fosdick v. Schall, 99 U. S. 235, and United States Trust Co. v. Wabash W. R. Co., 14 Sup. Ct. 86, 150 U. S. 287, followed.

3. SAME—DELAY IN PRESENTING CLAIMS.
   Delay of one who furnished supplies shortly before the receivership, to interpose his claim, until after the mortgage creditors have interposed by foreclosure proceedings, will not bar a recovery, if there are still assets from which the claim may be paid. Delay of the receivers to make payment is the delay of the court, against which the petitioner will be protected when practicable.

4. SAME.
   The equity of one who furnished supplies shortly before the appointment of receivers, to be paid out of funds or income in their hands, cannot be cut off, before he becomes a party to the proceedings, by orders entered at the instance of the mortgage creditors.

5. SAME—CHARGE ON CORPUS OF PROPERTY.
   Where the mortgage trustees subsequently intervene in the litigation, and ask the appointment of receivers, and procure the modification of the original order by which receivers were appointed, the appointing court then has power to make a claim for supplies furnished shortly before the original appointment a prior charge upon the corpus of the property. Miltenberger v. Railway Co., 1 Sup. Ct. 140, 106 U. S. 286; Kneeland v. Trust Co., 10 Sup. Ct. 950, 136 U. S. 89; Thomas v. Car Co., 13 Sup. Ct. 824, 149 U. S. 95; Bound v. Railway Co., 7 C. C. A. 322, 58 Fed. 473; Finance Co. of Pennsylvania v. Charleston, C. & C. R. Co., 10 C. C. A. 323, 62 Fed. 205,—followed.

6. SAME—FORECLOSURE SALE—DISCHARGE OF RECEIVERS—INTEREST ON CLAIMS.
   Where the road passes to the purchasers at the foreclosure sale, subject to existing claims, pending a claim for supplies furnished prior to the receivership, the claimant will not be entitled to interest, unless he shows that there were funds in the hands of the receivers, or their privies, es-

pecially applicable to the payment of the claim, and which would not have been exhausted by the allowance of interest. Thomas v. Car Co., 13 Sup. Ct. 824, 149 U. S. 95, and Meddaugh v. Wilson, 14 Sup. Ct. 356, 151 U. S. 333, followed.

7. COSTS ON APPEAL.—MODIFICATION OF DECREE.
    Where the appellant appeals from the whole decree, but only succeeds in modifying it in a minor particular, neither party will be given the costs of the appellate court. Packard v. Lacing-Stud Co., 16 C. C. A. 639, 70 Fed. 66, followed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Thomas Thatcher (Frank A. Farnham with him on brief), for appellant.

Alfred Hemenway and William D. Turner, for appellee.

Before PUTNAM, Circuit Judge, and NELSON and WEBB, District Judges.

PUTNAM, Circuit Judge. This is a summary petition on the heel of various decrees constituting a receivership of the assets of the New York and New England Railroad Company. The petition was framed for the payment by the receivers of the petitioner's supply bills; but, pending its consideration in the court below, there was a foreclosure sale, and, as the result thereof, the receivers were discharged, and the assets turned over to the purchasers, with the usual reservations. The petition has been reframed to meet this condition; but the substance is in no way affected, and it is to be disposed of on the same principles as though the assets turned over by the receivers were still in their hands.

The railroad of the corporation and its appurtenances were subject to two mortgages. The foreclosure was of the second. The first seems to have been amply secure in any event, so that the only effect of granting the petition would be to diminish the assets originally applicable to the second. Therefore we may consider the case precisely as though the first mortgage did not exist. Practically, the burden of the payment, if made, will fall on the purchasers; and the holders of the second mortgage will not now be affected thereby, as a final dividend has been made to them. Therefore no party appears in opposition except the purchasers; and it seems not to be disputed that they have so far succeeded to the equities of the mortgagees as to have a standing in court for this purpose, especially as the decree discharging the receivers contemplated that they should have it.

The facts are admitted in part, and are in part shown by the paper case in the main suits which resulted in the receivership and the foreclosure. Many questions are raised, but all of them are too familiar, or too plainly disposed of, to need discussion, except only the one arising from the fact that the decree of the circuit court established the claim as a lien on the corpus of the property, and thus gave it practical priority over the second mortgage. A temporary receivership was created by a decree, entered December 29, 1893, on a bill filed that day; and this was continued and set-

tled as a permanent receivership by a decree entered January 26, 1894. The earliest item in the claim of the petitioner was furnished September 22, 1893; and at the time the bill was filed, and also at the time the receivers were appointed, the claim was clearly one of that current class usually directed to be paid by receivers. The original bill was filed by one Wood, as sole complainant, and as the alleged holder of a few first mortgage bonds and a few shares of the capital stock of the New York and New England Railroad Company, against that corporation, as sole defendant. The trustees under neither mortgage were joined; so it cannot be claimed that any proceedings under that bill could affect the interests of either class of mortgagees, or establish any priority over them, without a violation of fundamental principles of law. The bill alleged that the corporation was insolvent, and that its system was in danger of being broken up, and asked no final relief, and no relief except the appointment of receivers to hold the system intact, and to protect the corporation against its creditors. It was one of those anomalous proceedings, so common in such cases, which the supreme court has never formally approved or disapproved, and which have been tolerated on account of the public and general interests involved, for which legislatures have given no protection under such emergencies. Occasional criticism has been expressed against the courts for retaining proceedings of this class; yet, as is usual under such circumstances, no formal objections appear to have been brought to the attention of the court in this case. While, therefore, we can justly presume that the appointment of receivers was found to have been for the common interest, yet we must refer to the state of the record in these particulars for the purpose of explaining that the receivers, at that stage, stood practically for the corporation itself, with all its rights and powers, subject to such limitations and directions as might be given by the court.

As is also usual in such cases, the receivership covered all the assets, papers, records, and books of account of the corporation. The former included, not only the railroad and its proper appurtenances, but supplies on hand, cash and cash items, traffic balances and other credits, and the tolls and other income accrued, accruing, or to accrue. Some of these, as supplies and tolls, were covered by the second mortgage, the supplies as after-acquired property, and the tolls or earnings of the railroad as incident to its franchises, which were the essential thing mortgaged. In equity at least, if not at law, the mortgage bound all these matters except cash, cash items, and credits. Pennock v. Coe, 23 How. 117, 126, 128, 130; Fosdick v. Schall, 99 U. S. 235, 251. Pennock v. Coe has always been recognized by the supreme court as settling the general principle in this particular, and has been cited for that purpose as late as Trust Co. v. Kneeland, 138 U. S. 414, 419, 11 Sup. Ct. 357. Nevertheless, it is well settled that, until the mortgage creditor interferes, the corporation may dispose of the supplies and tolls or other income as though unincumbered. Fosdick v. Schall, 99 U. S., at pages 252 and 253. This rule is one of practical necessity, and therefore of presumed license, and of

universal recognition, and has been approved by the supreme court in many other cases, of which, perhaps, the latest is United States Trust Co. v. Wabash W. R. Co., 150 U. S. 287, 306, 14 Sup. Ct. 86. Therefore, under the circumstances of the appointment of the receivers as originally made, the interests of the mortgagees were not concerned, because, so far as appertained to them, the court, through its receivers, might dispose, on general equitable principles, of all the various items under discussion, including cash, cash items, credits, income, and supplies, as the corporation, having just regard to all interests, could have done if it had remained in possession. But the courts, having in view that the main purposes of the receiverships are to prevent disintegration, and to maintain activity in the operation of the railroad, have never gone beyond appropriating such assets to the liquidation of such matters as the corporation would presumably have first applied them to in the event it had retained possession, and was faithfully struggling to accomplish the purposes for which the receiverships are created; that is, to the payment of accruing expenses and accrued traffic balances, current supply bills, and pay rolls, and to meeting such temporary emergencies, threatening the system, as could not otherwise be met. No cases have occurred where the federal courts have found in their hands assets in excess of such demands, not subject to mortgage liens, and applicable to the payment of general creditors. How such assets should be disposed of we need not consider.

The equities of the administration of property in the hands of receivers of railroad assets have been stated by the supreme court in different ways, and not always with expressed regard to the differing circumstances under which the receivers were appointed, and to the parties to the record; but, as applied to a case in the situation of the one at bar to this stage, that court has never in practice gone beyond the substance of what we have stated. In view thereof, the circuit court properly provided, in the decree already referred to settling the receivership, that the receivers might, "in their discretion, from time to time, out of the funds coming into their hands, pay  *  *  *  the current and unpaid pay rolls and vouchers and supply accounts incurred in the operation" of the system "at any time within four months prior" to the entry of the decree. Literally taken, this did not embrace the first item in the petitioner's claim, which was a very small one; but it did in its spirit, and the court, on application, would, without doubt, have given relief. As, under this decree, no funds, except those which but for it would have been at the disposal of the corporation, could have come into the hands of the receivers, the court did not thereby undertake to bind the corpus of the mortgaged property; nor, for the reasons we have given, could it have done so at that stage of the proceedings. It appears that, pursuant to the decree, many claims of the class of the petitioner's were paid by the receivers. Indeed, so far as the record goes, this is the only one unpaid. This would not be equity if the petitioner should ultimately fail of recovery, as equity demands equal distribution among all of the same class. Nevertheless, this is through the fault of the petitioner, because it delayed, without making an application to the

court itself, until after the next stage in the proceedings. This, however, will not bar recovery now, if there are assets from which the claim can still be paid. The delay of the receivers to make payment was, in law, the delay of the court; and the court will, of course, protect against its own delay whenever practicable to do so.

September 8, 1894, the trustees in the second mortgage filed their bill for foreclosure, which was consolidated with the then pending bill. In this they prayed that, pending foreclosure, they might be put in possession, or that receivers might be appointed, and that the proceeds of the foreclosure sale, and also the net earnings in the hands of such receivers, after payment of costs and expenses, should be applied on the mortgage debt. As the result of this, the then receivership was continued under a modified order, entered on September 8, 1894, which directed, in substance, that no payment of claims of the class in question should be thereafter made without the order of the court. This did not entirely cut out such claims, as the respondent maintains; but, on the other hand, it expressly reserved the right to consider all rights and obligations already created or incurred through the receivership. In any event, the court could not have cut off in that summary manner the equities of the petitioner, who was not a party to the proceeding. The order of September 8 also provided that the future possession of the receivers should be especially for the benefit of the mortgage creditors; but this, also, was aside from any participation by the petitioner, was only an affirmation of the ordinary equities as to income received pending foreclosure (Fosdick v. Schall, 99 U. S. 235, 251), already referred to, and could not destroy the special equities which we are considering. On the other hand, by this proceeding the representatives of the second mortgage voluntarily strengthened and confirmed the general equities in behalf of supply bills which we have considered, and brought themselves within the earliest statement of the principle underlying them given by the supreme court.

In Fosdick v. Schall, 99 U. S., at page 253, the court said:

"The mortgagee has his strict rights, which he may enforce in the ordinary way. If he asks no favors, he need grant none. But if he calls upon a court of chancery to put forth its extraordinary powers, and grant him purely equitable relief, he may, with propriety, be required to submit to the operation of a rule which always applies in such cases, and do equity in order to get equity. The appointment of a receiver is not a matter of strict right. Such an application always calls for the exercise of judicial discretion; and the chancellor should so mold his order that, while favoring one, injustice is not done to another. If this cannot be accomplished, the application should ordinarily be denied."

February 13, 1895, the petitioner made its claim in the circuit court. The petition sets out no special circumstances to distinguish the claim from an ordinary current supply bill, or to entitle it to a lien on the corpus of the mortgaged property. It states enough, in connection with what we have already explained, to entitle it to the usual order for payment by the receivers, and consequently by the purchasers referred to. Therefore, as it ranked only as an ordinary current supply bill, could the court give it priority over the mortgage in question, on the corpus of that portion of the property

as to which the corporation had absolutely parted with all power of disposal except subject to the mortgagee's title? Whatever might be our decision if the case was of novel impression, we think we are concluded by Miltenberger v. Railway Co., 106 U. S. 286, 292, 293, 295, 298, 302, 304, 308, 311, 1 Sup. Ct. 140, as explained, and perhaps limited, in Kneeland v. Trust Co., 136 U. S. 89, 96, 97, 10 Sup. Ct. 950; Thomas v. Car Co., 149 U. S. 95, 110, 112, 13 Sup. Ct. 824; Bound v. Railway Co., 7 C. C. A. 322, 58 Fed. 473, 480; and Finance Co. of Pennsylvania v. Charleston, C. & C. R. Co., 10 C. C. A. 323, 62 Fed. 205, 208. We are therefore required to hold that the circuit court had the power to give the priority complained of to supply bills of the character, contracted at the time, and remaining unpaid, under the circumstances shown in reference to those now at issue. What would have been the conclusion if the trustees of the second mortgage had not asked for a receiver, and had not submitted to the order of September 8, 1894, modifying to some extent the then existing receivership, and thus giving it retroactive effect as of the time of its original creation, we need not determine. So far as we have discovered, Miltenberger v. Railway Co. is the only instance in which the supreme court has in fact allowed accrued supply bills a priority against the corpus of mortgaged property; and, as we understand that suit, the circumstances of the case at bar in its final stages are substantially the same for our present purposes, and we have followed strictly its conclusions without going beyond them.

The court below allowed interest on the petitioner's claim, which allowance is assigned as error. If the petitioner had shown that there was a fund in the hands of the receivers, or their privies, especially applicable to the payment of this claim, which would not have been exhausted by the allowance of interest, it might, perhaps, have been computed. National Bank of Commonwealth v. Mechanics' Nat. Bank, 94 U. S. 437, 441; Richmond v. Irons, 121 U. S. 27, 64, 7 Sup. Ct. 788. But, under the circumstances of the case, we think we are bound by Thomas v. Car Co., 149 U. S. 95, 116, 13 Sup. Ct. 824, already cited, and Meddaugh v. Wilson, 151 U. S. 333, 360, 14 Sup. Ct. 356, to disallow it. Yet the petitioner, as appellee, is entitled to interest from the time of the entry in the circuit court of the decree in its favor.

As the appellant has not succeeded in reversing the decree below, although it appealed against the whole of it, but only in modifying it in a minor particular, we will follow the order as to costs adopted by this court in Packard v. Lacing-Stud Co., 16 C. C. A. 639, 70 Fed. 66, 68.

The decree of the circuit court is modified so as to allow petitioner interest only from February 4, 1896, and, as thus modified, is affirmed; and neither party will recover costs in this court.