BEACH v. HOBBS et al.

HOBBS et al. v. BEACH.

(Circuit Court of Appeals, First Circuit. February 13, 1899.)

Nos. 246, 247.

1. PATENTS—EFFECT OF PRIOR DECISIONS BY CIRCUIT COURTS OF APPEALS.
   As a general rule, and especially in patent cases, for the purpose of according to a patent the same recognition throughout the country, as contemplated by law, the decision of a circuit court of appeals of another circuit should be, followed with respect to the issues determined, if based on substantially the same state of facts.[1]

2. SAME—VALIDITY OF REISSUE—DECISION OF PATENT OFFICE.
   Where a patentee promptly applies for a reissue under Rev. St. § 4916, on the ground that by inadvertence or mistake in the drawings or specification the patent is rendered in part inoperative, and no substantial rights are affected, or fraudulent intent charged, the decision of the commissioner as to the facts giving jurisdiction to issue a new patent is conclusive.

3. SAME—INFRINGEMENT—LIMITATION OF CLAIMS.
   A patent for a machine for attaching stays to the corners of boxes contained claims for a combination of feeding mechanism, cutting mechanism, and pasting mechanism with other devices, the claims ending with the words, "substantially as described." Held, that the acquiescence of the patentee in a requirement of the commissioner that the words. "substantially as described," should be used to limit the word "mechanism" wherever it occurred in the claim did not preclude him from invoking the doctrine of known equivalents with respect to alleged infringers, nor, where his invention was a broad one, of merit, did it estop him from asking the court to apply a more liberal rule as to equivalents than is applicable to an invention which is merely an improvement on an old one.

4. SAME—VALIDITY AND CONSTRUCTION—BOX MACHINES.
   The Beach reissue, No. 11,167 (original No. 447,225), for improvements in machines for attaching stays to the corners of boxes, for the first time described a machine in which were organized clamping dies, and feeding. pasting, and cutting mechanism, which automatically attached stays of paper or like material to the corners of paper boxes, and the elements of its combination claims are entitled to a broad range of equivalents. The fact that another machine has a different feeding mechanism will not prevent its being an infringement of claims 1, 2, and 3, where such mechanism was well known as a proper substitute for that described at the date of the patent.

Appeals from the Circuit Court of the United States for the District of Massachusetts.

This was a suit in equity by Fred H. Beach against Clarence W. Hobbs and others for alleged infringement of a patent. From the decree entered (82 Fed. 916) both parties have appealed.

John Dane, Jr., for F. H. Beach.

Edward S. Beach, for C. W. Hobbs and others.

Before COLT, Circuit Judge, and BROWN and LOWELL, District Judges.

COLT, Circuit Judge. The subject-matter of this suit is reissued letters patent No. 11,167, dated May 26, 1891, granted to Fred H. Beach for an improvement in machines for attaching stays to the

[1] See note to Emigration Co. v. Gallegos, 32 C. C. A. 484.

corners of boxes. The court below decided that the defendants' machine infringed the sixth claim of the patent, and did not infringe the first, second, and third claims. Hence these cross appeals.

The Beach patent, for the first time in the history of the art, describes a machine for staying the corners of paper boxes with short strips of paper or muslin. Before this invention, the work had been done by hand. The original application was filed June 10, 1885. This application was put in interference with several others. After a controversy of five years in the patent office, the several interference proceedings were dissolved, leaving the priority of invention with Beach. The original patent was issued February 24, 1891. In October, 1890, Inman and Jaeger, two of the parties to the interference proceedings, brought suit in the United States circuit court for the Northern district of New York to set aside the patent to Beach, and award the invention to Inman. Upon proofs taken, and after arguments by counsel, the case was dismissed. A suit for infringement was afterwards brought in the same court by the complainant against the American Box-Machine Company and others. The record in that case was voluminous. The prior art was exhaustively investigated, including some 50 prior patents. After full hearing upon bill, answer, and proofs, Judge Coxe, in a carefully-considered opinion (63 Fed. 597), sustained the validity of claims 1, 2, 3, 4, 5, and 7 of the patent, and held that the defendants' machine infringed these claims. On appeal to the circuit court of appeals the case was again fully heard before Judges Wallace, Lacombe, and Shipman, and that court affirmed the decision of Judge Coxe. 18 C. C. A. 165, 71 Fed. 420. Subsequently another suit for infringement was brought in the same court by the complainant against the Inman Manufacturing Company and others, and, after hearing, a preliminary injunction was granted. 75 Fed. 840. This decision was affirmed by the circuit court of appeals. 24 C. C. A. 408, 78 Fed. 923. Although the defendants in this case are not the same, or in privity with the defendants in the other cases, we think, as a general rule, and especially in patent cases, we should follow the decision of the circuit court of appeals of another circuit upon final hearing with respect to the issues determined, if based upon substantially the same state of facts, unless it should clearly appear that there was manifest error. In discussing this question in the court below, Judge Putnam said:

"These considerations have a special importance as applied to a solemn and well-considered judgment of any circuit court of appeals with reference to a patent for an invention issued by the United States, when the state of the proofs remains substantially the same, in view of the reluctance of the supreme court to issue writs of certiorari in causes of this character, involving mainly questions of fact; otherwise such patents, although intended by statute to have effect throughout the whole country, would, for practical purposes, be territorially limited, and would be of effect only in portions thereof, and practically invalid in other portions. It is also to be borne in mind that there is no serious danger that the courts in any circuit, by following the decisions of the circuit court of appeals in other circuits, would perpetuate any seeming error, because of the power vested in the supreme court to rectify the same by issuing its writs of certiorari." 82 Fed. 916, 919.

The circuit court of appeals, on final hearing in the American Box-Machine Case, in affirming the decision of Judge Coxe, said:

"The elements of the first claim are the opposing clamping dies, the feeding mechanism, and the pasting mechanism. The second claim omits the pasting mechanism, and adds the cutting mechanism. The third claim is substantially a combination of all the elements of the first and second. The first three claims are broad ones, covering the particular combinations referred to, without any restriction to the details of mechanical construction; and defendants concede that, if these claims are to be sustained broadly as they are expressed, they are infringed. As to this first set, therefore, the only question is whether, in view of the state of the art, Beach was entitled to appropriate as broad a combination as he has set forth in his first three claims, which cover every device for affixing stay strips to the outside of box corners, where the operation is performed by the combined action of a feeding mechanism, a cutting mechanism, and a pasting mechanism, in combination with any opposing clamping dies whose faces diverge. The circuit court sustained these broad claims, and we concur in this decision. It is hardly necessary to add anything to the elaborate discussion of this part of the case, which will be found in the opinion of the learned judge who heard it in the circuit court. The patentee indisputably made a machine which did work that theretofore was always done by hand. * * * Certainly, the state of the art exhibits a necessary part of the work of box making as done by hand, with no machine existing in the art to do it. That machine the complainant was the first to supply. Moreover, the evidence leaves no doubt that it did the work it was devised to do. Subsequent improvements have made it do that work better, have made it practicable to apply stay strips to more varieties of boxes than Beach's original machine could readily handle; but that is immaterial when it is shown, as it has been here, that machines made in strict conformity to the patent have been used by manufacturers for years in doing this very work of applying short stay strips, and to the satisfaction of the users. So far as the record shows, no machine presenting the complete combination of the first three claims existed before Beach's invention, either in this art or any other. The nearest approach to it is the Dennis and Yorke machine, which pastes labels on folded newspapers. That has feed, pasting, and cutting mechanism combined with a vertical reciprocating plunger descending with a flat head on a flat platen, the newspaper being interposed between. This is quite a close approach to the machine of the patent. It is only necessary to change the flat head and the flat platen to clamping dies with diverging faces, and to make the machine stronger, in order to enable it to fasten stay strips to box covers. That is shown by the old Dennis and Yorke machine in evidence, which has been thus altered, and does such work. If this Dennis and Yorke machine were already in the box-makers' art; if some one prior to Beach had cut away part of its framework, had made its flat platen rigid, and increased its power, and employed it to affix adhesive labels to the tops or sides of boxes,—it might not be invention merely to change the shape of the dies so as to fit into and over box corners, and there apply adhesive strips. But no one had done this. The Dennis and Yorke machine was not in this prior art, and when Beach took it from another art, where it was doing different work, and by modification adapted it to efficient use in his own art, and thereby gave to his own art the first machine it ever had which could do work necessary to be done, and always theretofore done by hand, he made an invention to the fruits of which he should be entitled."

Upon a state of facts, in which the prior art was fully presented, the circuit court of appeals for the Second circuit sustained, on broad grounds, and, as we think, rightfully, the validity of the first three claims of the Beach patent. The defendants in this case have introduced several alleged anticipatory patents which were not before the court in the prior litigation, but it is apparent on inspection that they are much more remote from the Beach invention than some of the patents which were before the courts in the New York case, and which were commented upon in their opinions. As to the validity

of claims 1, 2, and 3, there is no new evidence in this case which should lead the court to reach any different conclusion from that of the court of appeals for the Second circuit.

It was contended in the prior litigation that the first three claims had been unlawfully expanded during the long proceedings in the patent office. Upon this issue the circuit court of appeals for the Second circuit said:

"Nor does the contention of the defendants that there has been some broadening or expansion of the first three claims during the long period of time that the patentee was in interference call for any extended discussion. When Beach first applied for a patent, in June, 1885, he described his entire machine, and each of the claims he submitted then covered the devices for turning in the end of the stay strip under the edge of the box. He filed amendments in May, 1886, in which he added to the specification the statement that where the stay is to be simply pasted down over the corners of the box, and is not to be turned under, the work can be done by his machine by using the angular form and one plunger with a corresponding angular notch. This was self-evident on the original specification and drawings, and the statement thus added to the specification described no new or enlarged invention. The original drawings and specifications suggest the claims finally made."

We agree with the statement and conclusion of the court on this point.

Upon the question of the validity of the reissue the same court observed:

"No question as to the effect of the reissue was argued in this court. It is unnecessary, therefore, to add anything to the opinion of the circuit court on that point."

The original patent was issued February 24, 1891, and the reissue was granted May 26, 1891, or three months thereafter. The reissue did not seek in any way to enlarge the scope of the original patent, or to appropriate other inventions or improvements. It was obtained solely to correct a mistake in the drawings of the original patent. On this point Judge Coxe said in the New York case:

"No authority is cited to sustain the defendants' theory, and it is thought that no tribunal will ever take the harsh and narrow view contended for; certainly this court will not be the first to do so. It appears from the original patent, assuming it to be properly in evidence, that there was a clear mistake in the drawings. Though this mistake did not render the patent wholly inoperative, it was of such a character that a machine constructed in accordance with the drawings would have been inoperative for some purposes which the inventor was entitled to cover by his claims."

Upon this question the court below observed:

"We may add, however, that in U. S. v. American Bell Tel. Co., 167 U. S. 224, 17 Sup. Ct. 809, the court, at page 267, 167 U. S., and page 809, 17 Sup. Ct., reaffirmed the statement that, even in matters of reissues, the commissioner of patents exercises quasi judicial functions. We are not aware of any decision of that court which deprives him of such functions with reference to questions of mere detail, and affecting no substantial right."

If by reason of any inadvertence or mistake in the drawings or specification a patent is rendered in part inoperative, and the patentee promptly applies for a reissue, and no substantial rights are affected, or fraudulent intent charged, we think the commissioner has the right, under section 4916 of the Revised Statutes, to cause a new patent to

issue, and that, under such circumstances, his decision is conclusive. We know of no authority in conflict with this proposition.

Upon the question of infringement we do not understand that the defendants' machine made under the Horton patent differs substantially from the Jaeger machine before the New York courts, so far as the appropriation of the Beach invention is concerned. Both structures infringe under the broad construction given to the first three claims of the Beach patent in the prior litigation. The main issue on this point relates to the feed mechanism. In the Beach machine the strip is fed from the side or across the apex of the box support, and in the defendants' machine the strip is fed from the rear in the direction of the apex of the box support. It is a "back feed," and not a "side feed," machine. The back feed is shown in the Knowlton machine, which was put into interference with Beach, and the patent office decided that it was covered by the Beach invention. However this may be, it cannot be questioned that the back feed was a known equivalent for the side feed at the date of the Beach patent. It also appears that the machine before the courts in the second circuit, which was held to be an infringement of the Beach patent, had a back feed. Horton, in his patent, under which the defendants manufacture, makes no claim to the feeding mechanism.

In the court below, the learned judge said:

"We bear in mind that the reciprocating plates of the respondents' mechanism, carrying the stay strip, are generally regarded as the equivalent of the complainants' feed rolls with their intermittent motion; but, notwithstanding this, the respondents' device for feeding seems to omit the complicated details which are parts of the complainants' device." .

Reference was also made to the fact that in the circuit court the complainant did not elaborate his case on that question, and to the possibility that the court did not fully understand the nature of complainant's combination with reference to the feeding device. It seemed to the learned judge that these details were apparently intended to accomplish special functions not set out in the patent. Upon the presentation of the case made in this court, however, we think that the differences in details are unessential, and do not affect the question of mechanical equivalence.

While we give full weight to the recent decision of the supreme court in Westinghouse v. Power-Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, and recognize that it is an abuse of the term "equivalent" to employ it to cover every combination of devices in a machine which is used to accomplish the same result, we are of the opinion that the feeding mechanism of the defendants, according to the repeated expressions of the supreme court left unqualified by the decision in Westinghouse v. Power-Brake Co., and recognized in that case by its citation of Imhaeuser v. Buerk, 101 U. S. 647, 656, is a mechanical equivalent for the feeding mechanism of the complainant, since it was well known as a proper substitute for the one described in the complainant's specification at the date of his patent. Upon a liberal construction of the first three claims of the Beach patent, and recognizing the doctrine of known equivalents as applicable thereto, we hold that the defendants' machine embodies the combinations covered

by these claims; and we also hold the same to be true of claim 6, in which the combination is limited to the opposing dies constructed and operating as described. In our opinion, neither the words "substantially as described" in the claims, nor the proceedings in the patent office in which the patentee acquiesced in the decision that these words must be inserted after the word "mechanism" in the claims, prohibit the patentee from invoking the doctrine of known equivalents with respect to alleged infringers. Nor in dealing with a broad invention which represents a distinct advance in the art does it estop a meritorious inventor from asking the court to apply a more liberal rule as to what constitutes equivalents than is applicable to a narrow invention which is only an improvement on what was old and well known. "The range of equivalents depends upon the extent and nature of the invention." Miller v. Manufacturing Co., 151 U. S. 186, 207, 14 Sup. Ct. 310. The Beach patent for the first time describes a machine in which were organized clamping dies, feeding, pasting, and cutting mechanism, which automatically attaches stays of paper or like material to the corners of paper boxes. The patent says:

"As far as the main features of my invention are concerned, forms other than those illustrated of the several parts of the machine may be employed without departure from my invention,—as, for instance, in place of the particular mechanisms shown for feeding or delivering fastening strips or stay strips to and between the clamping dies, or for applying paste or glue to the said stay strips; other forms of strip-feeding and pasting devices may be used in practice with the same general result, as above described."

It would be giving too broad a construction to the Beach patent to hold that it covered every combination of clamping dies, feeding, pasting, and cutting mechanism which accomplished the same result, but it should be held to cover a combination of these elements, or their known equivalents, at the date of the patent. The patent should not be limited to the particular form of devices described. Winans v. Denmead, 15 How. 330; Machine Co., v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299; Tilghman v. Proctor, 102 U. S. 707; Proctor v. Bennis, 36 Ch. Div. 740. The decree of the circuit court is reversed with respect to the first three claims of the patent, and affirmed as to the sixth claim, and the cause is remanded to that court with directions to proceed in conformity with this opinion. Costs in this court are awarded to the complainant, Fred H. Beach.