HATCH STORAGE BATTERY CO. v. ELECTRIC STORAGE BATTERY CO.

(Circuit Court of Appeals, First Circuit. March 16, 1900.)

No. 298.

1. PATENTS—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.
    The rule that the validity of a patent must be clearly shown by the proofs to warrant the granting of a preliminary injunction in a suit for its infringement, unless supported by public acquiescence or prior adjudication, applies also to the question of infringement; and, although the validity of the patent has been established by prior adjudications, unless they also cover the issue as to infringement, the proof of infringement must be clear, or the injunction should be denied.

2. SAME—EFFECT OF PRIOR DECISIONS.
    In patent cases the decision of the circuit court of appeals of another circuit upon final hearing should be followed with respect to the issues determined if based upon substantially the same state of facts, although the defendants are not the same, or in privity, unless it clearly appears that there was manifest error; especially where such decision has stood for a number of years.

3. SAME—INFRINGEMENT—STORAGE BATTERIES.
    The Brush patent, No. 337,299, for improvements in secondary batteries, claim 3, is sufficiently broad to cover any secondary battery which consists of metallic plates, layers of active material, and a mechanical support which gives electrical contact between them, and is infringed by a battery in which the active material is first cemented to the surfaces of nonconducting porous battery plates, and then brought in contact with the surfaces of the lead plates, and there held.

4. SAME—DECRETAL ORDERS IN SUITS FOR INFRINGEMENT.
    Complainants in patent cases must be careful to limit their decrees and decretal orders to precisely what was determined by the court, under penalty of being subjected to costs on appeal therefrom.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Causten Browne and Alexander P. Browne, for appellant.

John R. Bennett (William B. H. Dowse, on the brief), for appellee.

Before PUTNAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

PUTNAM, Circuit Judge. This is an appeal from a decretal order granting an ad interim injunction in a suit on a patent for an invention. The general rules involved in the allowance of such injunc-

tions were stated by us in Wilson v. Store-Service Co., 31 C. C. A. 533, 88 Fed. 286, 287, as follows:

"When the effect of a temporary injunction is merely to maintain matters statu quo until a final hearing, one may well be granted notwithstanding the rights of the complainant are doubtful, and sometimes even when very doubtful. But in patent suits such an injunction does not ordinarily have that effect. On the other hand, the respondent, while under the injunction, is ordinarily a constant loser, and never regains his losses unless the complainant has given a bond. Therefore, in this class of cases the courts usually hold that, unless the patent is supported by public acquiescence or prior adjudication, or some other peculiar condition, the complainant's rights must be free from doubt to entitle him to a preliminary injunction. * * * The case at bar is not an exceptional one in other particulars, so that the questions are as follows: Is the validity of the patent clear? Or has there been a prior adjudication? Or has there been sufficient acquiescence?"

It will appear further on that, so far as the validity of some of the claims in the patent at bar is concerned, there has been a prior adjudication, but there has been none on the precise question of infringement here involved. Applying, therefore, the underlying principle of the general rules stated by us in the case cited, that there must have been a prior adjudication, or the validity of the patent must be clear, the injunction in this case ought not to have been granted, unless, on the facts proven, the respondent has clearly taken the complainant's device. The rule is thus applied to cover the issue of infringement, as well as that of the validity of the patent, by the circuit court of appeals for the Third circuit, in Blakey v. Manufacturing Co., 37 C. C. A. 27, 95 Fed. 136, and by Walk. Pat. (3d Ed.) § 676, and by Rob. Pat. § 1173.

Another rule of law which it is proper to invoke is that stated by this court in Beach v. Hobbs (by an opinion passed down on February 13, 1899) 34 C. C. A. 248, 92 Fed. 146, 147. Aside from the well-established rule restated in Wilson v. Store-Service Co., ubi supra, at page 535, 31 C. C. A., and page 288, 88 Fed., that ordinarily a prior determination on final hearing, after a bona fide and strenuous contest, is sufficient to justify an injunction, even as against a new defendant, this court, in Beach v. Hobbs, said, at page 250, 34 C. C. A., and page 147, 92 Fed., with reference to the effect of a prior adjudication by the circuit court of appeals in another circuit as against other parties, but on the same patent, with relation also to a final hearing in this circuit, as follows:

"Although the defendants in this case are not the same or in privity with the defendants in the other cases, we think, as a general rule, and especially in patent cases, we should follow the decision of the circuit court of appeals of another circuit upon final hearing with respect to the issues determined, if based upon substantially the same state of facts, unless it should clearly appear that there was manifest error."

Where the prior adjudication comes from a court of final authority, like the circuit court of appeals in any circuit, and has stood for a series of years, the rule thus stated in Beach v. Hobbs is re-enforced by the additional considerations explained in Bresnahan v. Leveler Co. (C. C. A.) 99 Fed. 280, in an opinion passed down on January 10, 1900. In the case at bar it will be found that all the considerations which give weight to prior adjudications, so far as they relate

to the validity of certain claims in the patent in issue, have full force.

Beyond stating that the pending appeal relates to claims 1, 2, 3, 9, 10, and 12 of patent No. 337,299, issued to Charles F. Brush on March 2, 1886, relating to improvements in secondary batteries, we are saved, by the amount of judicial literature relating to the subject-matter of this case, from doing much more than giving our conclusions. Indeed, it is not even necessary to fully recite the claims, as the patent is found at length in Electrical Accumulator Co. v. Brush Electric Co., 1 U. S. App. 320, decided by the circuit court of appeals for the Second circuit, the opinion having been rendered by Judge Shipman. The case is also fully reported in 2 C. C. A. 682, and 52 Fed. 130. The references in this opinion will be to 1 U. S. App. The validity of claims 1, 2, 3, 6, 7, and 12 of the patent in issue was fully sustained. That covers all in issue here, except 9 and 10. The case was very elaborately considered. The decision has never been judicially overruled, doubted, or qualified. Therefore, on the principles which we have stated, although it was against a different respondent from that at bar, it must be accepted as conclusive on this appeal as to the validity of claims 1, 2, 3, and 12. There can be no question as to the state of facts as between that case and this appeal, because, in that case, there were under consideration the entire state of the art, and all the anticipatory matter which has been laid before us, including, especially, the publications about the De La Rive battery and the patent to George G. Percival, No. 53,668, issued on April 3, 1866.

The issue of infringement, however, as presented in the case at bar, was not before the circuit court of appeals in the Second circuit. It was there said, at page 553 (2 C. C. A. 689, 52 Fed. 136), that there was no question as to infringement. This is elaborated by the observation of Judge Shipman, at page 561 (2 C. C. A. 694, 52 Fed. 141), in regard to the sixth and seventh claims of Mr. Brush's patent. He observed:

"The battery of these claims is the one distinctly known as the storage battery of Brush, and is the one with which the battery of the defendants, which is filled with the paste or cement of Faure, corresponds."

As Judge Shipman construed these particular claims, they contemplated filling grooves, perforations, or other receptacles in the lead plates with the active material, and therefore they were extremely narrow; so that, as the respondent's device before Judge Shipman infringed claims 6 and 7, it certainly infringed the claims which are in issue here. It follows, as we have said, that the careful construction of the claims necessary to determine the question of infringement on this appeal has never been adjudicated.

In the device of the respondent in this case, the active material is first cemented to the surfaces of nonconducting porous battery plates, and then brought in contact with the surfaces of the lead plates, and there held. The substance of the contention of the respondent is that this is not an infringement, because Brush's claims are limited to lead plates which not merely support the active material in any one of all the various meanings of the word "support," but actually carry it in such manner that the plates resist the entire specific gravity of the active material. The proposition of the respondent

100 F.—62

is to the effect that at the date of Brush's invention the state of the art was such as to narrow what Brush did to mechanically tying together the active material and the lead plates in such method that the lead plates carried the active material in the limited manner we have described. As there are some expressions in the opinion of Judge Shipman which give color to this proposition, we deem it necessary to investigate to some extent the true nature of Brush's invention, and also to determine whether or not any of the claims in issue cover what he did, at all times keeping ourselves within such limits of safety that the conclusions we reach will be within the rules we have stated as to ad interim injunctions.

The fraction of Brush's invention now before the court has been variously described. It is conceded to be practically the same as that of Faure, a citizen of France. Various inharmonious and differing descriptions of its nature are recited by Judge Coxe in Electrical Accumulator Co. v. Julien Electric Co. (C. C.) 38 Fed. 117, 132, 133. According to the extracts there given, the inventor himself "boasted" of being the first that produced spongy lead in large quantities on the electrode of a battery, and that he was the first to recognize it as an element of a secondary battery. The other extreme theory of Brush's invention is that which we have already said is propounded by the respondent in the case at bar, and which would find support in the expressions of Judge Shipman cited by the respondent, if they were to be taken literally, and without qualification, by what appears elsewhere in his opinion.

Between these extremes, we find the statement made by the witness Brackett in the following language. In referring to the respondent's battery, he said:

"The conducting lead plates are throughout their extent substantially in contact with the layers of active material, so as to be in electrical connection therewith, and this, whatever be the method of mere mechanical support, embodies the invention of Brush in the patent in suit."

This embraces three elements: First, plates; second, layers of active material; and, third, any mechanical support of the plates and active material which gives electrical contact. Although this does not, perhaps, express the invention in strictly accurate and technical language, yet we are clear that the limit which is given in it is safe.

The patentee, in his specification, uses the following language:

"I would have it understood that I do not restrict myself to any particular form of active or absorptive material, or to any particular method of applying it to or combining it with the plate or support, as my invention consists, broadly, in a secondary battery plate or element having active or absorptive material primarily and mechanically applied thereto or combined therewith, as contradistinguished from a plate or element having the active material produced by the disintegrating action of electricity, as in the well-known Planté process."

The Planté process is explained in Electrical Accumulator Co. v. Brush Electric Co. All we need say about it is that an ever-present feature of it is a lead plate, on which there was formed in the battery, by electrolysis, a film or skin of peroxide of lead. Returning, therefore, to what Brush said as to the "well-known Planté process," Judge Shipman says, at page 548 (2 C. C. A. 685, 52 Fed. 133), that "the

improvement described in No. 337,299 was confessedly an improvement upon the Planté battery, and upon no other." Also, on page 552 (2 C. C. A. 688, 52 Fed. 135), he says: "He [Brush] is describing an improvement upon a Planté secondary battery," etc. "Brush's secondary battery is Planté's secondary battery improved, and his language is to be read in the light of that fact," etc. Speaking of Percival's invention, at page 552 (2 C. C. A. 688, 52 Fed. 136), he says: "This invention, as described, resided solely in the substitution of separate layers of coarse powder for the two metallic plates of a Planté battery." It appears throughout, therefore, that Judge Shipman insisted that metallic plates underlaid Planté's conception, and that the same underlying element was carried forward into Brush's invention. This is made all the more clear from what we gather of the De La Rive battery, and from what was shown in Percival's patent. With reference to Percival, we must, on the proofs before us, accept the explanation given of it in the expression of Judge Shipman which we have already cited.

Prof. Trowbridge shows certain distinctive features of the De La Rive battery as follows:

"In the year 1863 there was described in the Electrician, in an article on 'Secondary Batteries,' a battery in which the oxygen electrode consisted of a porous cup containing peroxide of lead with a conducting strip of platinum or lead extending down through the mass of peroxide. * * * In the De La Rive battery, the active material was not supported by the metallic conductor, but was supported by a porous cup."

This explanation of the De La Rive battery by Prof. Trowbridge, we also must accept on the proofs in the record.

It is to be borne in mind that we must apply, on the question of the effect of the De La Rive and Percival devices on this appeal, the rule that the complainant must establish its case clearly on all questions except so far as determined by the circuit court of appeals in the Second circuit, as we have already explained the result of that case. Therefore, as the record does not show clearly whether or not the De La Rive and Percival devices cover secondary batteries in the strict sense of the word, we must assume that they do, as was apparently assumed by both Judge Shipman and Prof. Trowbridge. Consequently, wherever Brush, in the extract which we have made from his specification, uses the words "or element" in connection with the word "plate," the words "or element" must be stricken out, with reference, at least, to an application for an ad interim injunction. Therefore, in one direction, for the purposes of this appeal, we must insist that a plate, as a plate, is an element in this combination. Looking, however, in the other direction, we perceive clearly the other limit of which we may give the complainant the benefit on a proceeding of this character. We have referred to certain expressions of Judge Shipman in Electrical Accumulator Co. v. Brush Electric Co., which, taken literally and alone, support the narrow construction which the respondent below puts on the invention in issue; but, after remarking that Brush's improvement was confessedly an improvement on the Planté battery, and on no other, as we have already stated, he says, at page 548 (2 C. C. A. 685, 52 Fed.

133), that it consisted "broadly," and so forth, "as contradistinguished from a plate or element having the active material produced by the disintegrating action of electricity, as in the well-known Planté process." This expression is found in the extract from Brush's specification which we have already given. The keynote of this is that Brush's invention is set off against Planté's method of obtaining the active material by electrolysis, and therefore it embraces everything where a plate is used which can be thus distinguished from Planté. Of course, as is implied by the expression used by Judge Shipman in referring to Brush, at page 561 (2 C. C. A. 694, 52 Fed. 141), "a larger surface of metal was exposed," an essential feature of his invention is such an arrangement as will give a large area of reliable electrical contact. Putting all this together, Judge Shipman's expressions permit Brush's invention to be construed substantially as Brackett described it; and there is nothing in the record inharmonious with this result. On the whole, we find enough in the proofs to clearly require us to maintain that Brush's invention covers the limits which we have stated; that is to say, on the one hand, plates, and, on the other hand, a combination giving electrical contact between plates and active material mechanically applied.

We do not deem ourselves justified in going at length into the proofs on this last proposition, which, on a final hearing, may put on a very different aspect from that which they now present. We must, however, refer to the positions taken by the respondent with reference to the De La Rive battery and the Percival patent. It is admitted that these devices belong to what the respondent describes as the "vessel-support class," and it is claimed that the respondent's device is of the same class. We are looking now only with reference to the limits which we must place on Brush's invention. We are bound to assume, as we have already said, that both the De La Rive and Percival inventions related to secondary batteries, strictly speaking, or, at least, covered them; but, as already said in the expressions which we have cited from Judge Shipman and Prof. Trowbridge, in each of them the active material was contained in a "vessel" with porous walls. It is clear that there is nothing in a "vessel," as fairly understood, which gives normal opportunity for the area of electrical contact with the metallic plate which we have seen was one of the features of Brush's device. Indeed, the conformation of a vessel which will hold some finely-divided metallic substance, especially the conformation of a porous cup, excludes this feature in all reasonable and ordinary uses of the expression. We have clear, reflected light cast on this matter by the evidence of Morton, brought into the case by respondent. He said:

"I feel certain that any one with the knowledge possessed by one familiar with the construction and operation of galvanic batteries at that date would (with the Percival patent before him) construct a battery which would consist, in substance, of large metallic plates of copper (or of lead, if he employed lead in powder in place of charcoal), covered with a layer of carbon or lead in coarse powder," etc.

Of course, this necessarily means the construction of what did not exist,—that is to say, plates; and it leads plainly to the conclusion

that Morton did not find plates in the Percival battery. No more could he find them in De La Rive's. We may remark that his suggested possibilities of the Percival battery are rendered of no avail under the practical rules stated by us in Heap v. Suffolk Mills, 27 C. C. A. 316, 82 Fed. 449, 453. We are clear, therefore, that in no practical or reasonable sense of the expression can Brush's plates, combined in the way which we have explained, be found anywhere in the period intervening between Planté and him; and there is not the slightest suggestion that it preceded that period.

We have next to consider how far the patent in issue covers Brush's invention within the limits which we can clearly concede to it. We will first look at the specification. Here we are met by the respondent with the proposition that the word "support" is everywhere present, and that, instead of giving to it the comprehensive construction ordinarily given it, it must be limited in the narrow way claimed by the respondent, as we have pointed out. On the other hand, according to the rules stated in Reece Button-Hole Mach. Co. v. Globe Button-Hole Mach. Co., 10 C. C. A. 194, 61 Fed. 958, we are not permitted, in litigation of this character, to give any word a particular interpretation when it is fairly capable of another one which will enable the patent to cover the actual invention. Not only does the word "support" include bearing weight, but it is also used by the student, and understood in common phraseology, as covering "to keep from falling," and other kindred expressions. It certainly is capable of a liberal interpretation for the purposes which we have before us. All the comments made on this word, and likewise all the comments made on the word "coated," wherever found in this patent, must yield to this rule of construction; but it is not necessary to rely on this, because in every case where the word "support" or the word "coated" appears they are coupled with the alternative word "combine." Therefore, in every aspect, there is no difficulty arising from the use of any of the particular words which the respondent emphasizes to us; and the specification is left to be controlled by the expression to which we have already called attention; that is to say, "as contradistinguished from a plate or element having the active material produced by the disintegrating action of electricity, as in the well-known Planté process." Omitting the words "or element," this is the master expression, as we have already pointed out; and nothing can be found in the specification which relieves us from giving it the full force to which it is fairly entitled.

We are now prepared to consider whether or not any of the claims of the patent in issue clearly cover Brush's full invention as thus explained. The third claim does. This is in the following language:

"A plate or suitable support primarily coated or combined with mechanically applied oxide of lead or equivalent lead compound, substantially as set forth."

Our conclusion is made plain by striking from this claim all the alternative phraseology, and thus leaving only what is necessary to it; that is to say, the following:

"A plate combined with mechanically applied oxide of lead or equivalent lead compound, substantially as set forth."

In construing this claim, we are permitted to omit the alternative words which we have stricken out, because, if they stood alone, they would narrow the claim within Brush's actual invention. The word "primarily" a careful examination of the specification will show is only equivalent to the effect of the use of the word "mechanically." Indeed, in the opening paragraph of the patent one is used for the other. The word is not one which, in this connection, has so clear an interpretation as to require such effect to be given to it as to defeat the just result of supporting a clearly proven invention. So, also, the words, "substantially as set forth," found in this claim, unless under the most exceptional circumstances, have never been held to defeat the just rights of an inventor. This court very lately, in Beach v. Hobbs, 34 C. C. A. 248, 92 Fed. 146, 151, said that these words do not prohibit a patentee from invoking the doctrine of known equivalents. Therefore we are plainly entitled to simplify the claim as we have done, and thus to bring it down to correspond precisely with Brush's invention within the limitations which we have allowed it.

Claims 9 and 10 were not within the consideration of the circuit court of appeals in Electrical Accumulator Co. v. Brush Electric Co.; and, therefore, under the rules applicable to ad interim injunctions, we give them no further attention. The effect of claim 12, which relates to a process, is doubtful, and therefore we pass it by. The first claim contains the expression "or material adapted to become active." This expression is used in the alternative; but, unlike the alternative words found in claim 3, if it stood alone it might enlarge the claim beyond the invention, instead of limiting it, and therefore it renders this claim of doubtful validity. Claim 2 contains the words "provided with a coating or surface layer," etc., which brings it within the same narrow class as claims 7 and 8, as explained by Judge Shipman in the references which we have already made to his opinion; so that probably it is not infringed by the respondent's device. On the whole, we limit complainant's remedy on this appeal to the third claim.

What we thus have remaining of the third claim, as we are at liberty to reconstruct it, is clearly within Brush's invention as shown by his specification and the state of the art. It requires only a plate combined with mechanically applied active material. Neither the invention nor the claim requires that the active material should be carried by the plate in the manner which the respondent asserts. The word "combined," alike in the claim and in the specification, is not to be narrowly construed. It must be conceded that in this connection it is not limited to either a chemical or a molecular combination. A close contact, sufficient for electrical purposes, is clearly within a fair meaning of the word; and a close contact is clearly within the field of Brush's invention.

Even under the limited construction which, for this appeal, we thus give the invention and claim 3, the respondent's device, as we have already partly explained it, is clearly an infringement. Its active material is first cemented to the surfaces of nonconducting porous battery plates, and then is brought into contact with the

surfaces of lead plates, and held there. Of course, on our construction of Brush's invention and claim 3, the fact that the respondent's lead plates are of extreme thinness is of no consequence. Neither is it possible, on the rules of construction which we have applied to this case, to hold that the respondent's nonconducting porous battery plates make its device of the vessel-support class; and any flat substance, like the respondent's porous plates, which fairly permits the proper area of electrical contact with the lead plates, is, neither theoretically, nor for practical purposes in the art which we are considering, a cup or vessel. It may be true that the respondent improved the details of combining the active material with the plates over those demonstrated by Brush; but it seems to us clear that it uses all the essential elements of Brush's invention, and of the third claim, within the limits which we have given. Therefore it also seems to us clear that the respondent has taken the complainant's device.

As we have already said, the only claims in issue are 1, 2, 3, 9, 10, and 12; but the decretal order taken by the complainant below covered all the claims in the patent. Considering the uses to which decrees and decretal orders in patent cases are applied, and the frequent inability of the great public with which they are used to ascertain the circumstances under which they issue, we have several times cautioned parties complainant that they must be careful to limit their decrees and decretal orders to precisely what was determined by the court. In this case, the decree below should be modified only in a particular which does not affect the substantial interests of the parties. Therefore, if nothing else appeared, neither party would ordinarily be given the costs of appeal, as was determined by us in Packard v. Lacing-Stud Co., 16 C. C. A. 639, 70 Fed. 66, 68, and in New England R. Co. v. Carnegie Steel Co., 21 C. C. A. 219, 75 Fed. 54, 59; but, in connection with the caution which we have heretofore given parties with reference to the proper limiting of decrees and decretal orders, we said in Shute v. Machine Co., 12 C. C. A. 356, 64 Fed. 368, 369, that, when the caution was not thereafter regarded, we should endeavor to protect ourselves by a proper adjustment of the costs. The decretal order appealed from is modified so as to limit it to the third claim, and, as so modified, is affirmed; and each party shall pay one half of the costs of appeal.

ALDRICH, District Judge. I concur in so much of the foregoing result as sustains the third claim and the injunction thereon. I do not expressly dissent as to the other matters discussed in the opinion, but, in view of the decisions elsewhere upon final hearing, I doubt the expediency upon an appeal from a preliminary injunction of passing upon all the matters contained in the opinion.