# BRILL *v.* WASHINGTON RAILWAY & ELECTRIC COMPANY.

Courts; Comity; Patents.

1. The obligation to follow the decisions of other courts in patent cases increases in proportion to the number of courts which have passed upon the question; and the concordance of opinion may have been so general as to become a controlling authority. If a prior adjudication has followed a final hearing upon pleadings and proofs,—especially after a protracted litigation,—greater weight should be given to it than if it were made upon a motion for a preliminary injunction.

2. In a suit for infringement of patents for improvements in car trucks, and for an accounting, where it appeared that the questions involved had been the subject of protracted litigation between the same parties, or representatives of the same interests, and had been decided adversely to the complainants by one Federal court, the decision of which had been followed by another Federal court, this court, upon the principle of comity, also followed such decision, and sustained a decree dismissing the bill.

No. 1662. Submitted February 7, 1907. Decided January 8, 1908.

Hearing on an appeal from a decree of the Supreme Court of the District of Columbia, holding an equity term, dismissing a bill in equity to enjoin the infringement of certain patents and for an accounting.                              *Affirmed.*

The facts are stated in the opinion of Mr. Justice McComas, which follows.

*Messrs. Church & Church* and *Mr. Francis Rawle* for the which follows.

*Messrs. Warfield & Duell* and *Mr. Charles H. Duell* for the appellee.

The following opinion was written by Mr. Justice McComas:

This is an appeal from the decree of the court below on final hearing upon a bill filed by John A. Brill and the J. G. Brill Company to restrain the defendant, the Washington Railway & Electric Company, from infringing upon two letters patent to G. Martin Brill for improvements in car-trucks, and for an accounting.

The letters patent are number 627,898, and the claims in controversy therein are as follows:

"13. The combination, in a car-truck, of the side frames, the semi-elliptic springs movably and resiliently suspended from the side frames, and a bolster secured to said springs, substantially as described."

"81. The combination, in a car-truck, of the side frames, the semi-elliptic springs, a cross-bolster resting on the semi-elliptic springs, links, and springs combined with said links, said links deriving their support from the side frames and connecting the ends of the semi-elliptic springs with the side frames, substantially as described."

—and number 627,900, wherein the claims in controversy are as follows:

"13. In a car-truck, the combination, with the side frames, of the links comprising bolts pivoted between their ends, said links being pivotally suspended from the side frames, longitudinally disposed semi-elliptic springs secured to the lower end of said bolts, a cross-bolster resting on said springs, and further springs included in the link suspension of said semi-elliptic springs, substantially as described.

"14. In a car-truck, the combination, with a side frame, of the cross-bolster suspended below the side frame by semi-elliptic springs and pivotal links, said links comprising a plurality of sections pivotally secured together and further springs combined with said links to elastically suspend said semi-elliptic springs from the side frame, substantially as described.

"15. In a car-truck, the combination of the side frames, of the cross-bolster suspended below the side frames by semi-

elliptic springs and articulate and pivoted links, said links comprising a plurality of section pivotally secured together, and spiral springs about and combined with said links to elastically suspend said semi-elliptic springs from the side frames, substantially as described."

"17. The combination, in a car-truck having an upper chord, of the longitudinally disposed semi-elliptic springs, a transverse bolster supported upon said springs, links depending from and flexibly supported on said upper chord and passing through enlarged apertures therein, said links being articulated between their ends, the ends of the semi-elliptic springs being supported upon the lower articulation of said links, substantially as described."

These patents bear date of June 27, 1899, the latter of the two patents being divisional in its relation to the former. The original application was filed July 3, 1897, and the divisional application November 9, 1897. Both patents relate to improvements "in car-trucks generally," but especially to trucks employed in passenger service in connection with electric propulsion.

The bill was filed by John A. Brill, assignee of the patents, and the J. G. Brill Company, manufacturers of car trucks in Philadelphia and exclusive licensees under the patents.

The Peckham Motor Truck & Wheel Company, of Kingston, New York, manufactured the trucks in controversy, and later passed over its plant and business to its successor, the Peckham Manufacturing Company.

It appears that the present suit is the fifth which has been instituted by the complainants, the first having been prosecuted by John A. Brill, assignee of George N. Brill, the patentee, without joining the J. G. Brill Company, the exclusive licensee of the patent, which was joined in the next two suits. All of these suits involved alleged infringing constructions of the same type as the Peckham 14 B3 trucks, and all of the claims with which we are here concerned were involved in the principal suit, in which there was a final adjudication.

In the order named, these suits were instituted against North

Jersey Street Railway Company, in the United States circuit court for the district of New Jersey; Peckham Motor Truck & Wheel Company *et al.* and Peckham Manufacturing Company *et al.,* in the United States circuit court for the southern district of New York; Anacostia & Potomac River Railway Company, and the Washington Railway & Electric Company, in the supreme court of the District of Columbia. The first-named suit proceeded to final hearing. The decree of the circuit court in favor of John A. Brill was reversed by the United States circuit court of appeals of the third circuit, and the case was remanded to said circuit court of the United States for the district of New Jersey, with directions to enter a decree dismissing the bill of complaint, with costs. The said circuit court of appeals decided that "claim 13 of the Brill Patent No. 627,898, and all the other claims in suit which rest upon the like combination," were void for want of patentable invention. Claims 13 and 17 of letters patent No. 627,900 were further declared not infringed. Claims 14 and 15 of the latter patent were not adjudicated.

Preliminary injunctions which had been obtained in the southern district of New York, in the second and third suits before mentioned, based upon the decision of the circuit court in New Jersey in favor of complainant, were vacated and reversed upon appeal, the circuit court of the southern district of New York and the circuit court of appeals of the second circuit having by comity followed the decision and decree of the circuit court of appeals of the third circuit. The suit against the Anacostia & Potomac River Railway Company was discontinued.

It sufficiently appears from the record that the present suit involves the same complainants, the J. G. Brill Company being one of a combination of several companies, and having been in privity with John A. Brill in the suit in the circuit court for New Jersey; that the manufacturer of the alleged infringing trucks is and was the real defendant in each case; that the Peckham Manufacturing Company is the successor to the Peckham Motor & Wheel Company; and that the same type of al-

leged infringing construction, and the same claim of the same letters patent, with the exception of claims 14 and 15 of letters patent No. 267,900, which were involved in the New Jersey suit, and as to which no decree was entered, are involved herein.

The complainants in this suit have produced the same expert, and, with some exceptions, the same witnesses, who testified in the North Jersey suit, and all of the testimony covers the same ground. The defendants herein have for the first time produced two witnesses, alleged experts in patent office proceedings, and have cited additional patents as references. The subject-matter of this suit was adjudicated by the circuit court of appeals of the third circuit. The present and prior cases are stages of the same controversy between competing truck builders.

Judge Bradford, in the court below in the North Jersey suit, justly remarked that it was admitted on the part of the complainant that unless the suit be maintained with respect to claim 13 it cannot be maintained as to any of the claims of patent No. 627,898. The same admission and conclusion must be taken as true of claims 13 and 17 of patent No. 627,900, because these claims cover all that is material in this suit.

The patents in suit belonged to an art in which very many patents have been granted for trucks adapted for use with vehicles propelled by steam or horse power; and later, as electric motors have come into use, the art of truck construction, whether relating to car trucks generally, or to trucks employed in passenger service in connection with electric propulsion, has, with convenient modifications, been applied to modern uses.

The claims with which we are here concerned in patent No. 627,898 involve a truck frame, spring links suspending from the truct frame, semi-elliptic springs connecting the links, and means (a bolster) for connecting the semi-elliptic springs with the car body.

Claims 13, 14, 15 and 17 of patent No. 627,900 embody the same element, but particularly relate to the details of spring-link construction; and this patent, being divisional, re-

lates more specifically to the precise form of link construction illustrated therein.

In the specification of patent No. 627,898, Brill disclaims the location of the spring links and semi-elliptic springs. This disclaimer involves two admissions which appear to preclude the complainants' claims in this controversy. It appears that all of the claims of the two patents in suit are invalid, either as anticipated in the prior art, or lacking in patentable invention.

We strongly incline to the opinion that these claims disclose no patentable invention over the Thyng patent, and that it did not involve patentable invention to substitute in the Thyng combination of spring-supported bolster and non-elastic hangers, the spring hangers or spring-supported hangers of the Beach, Haskins, Brill, and Curwen, or other patents, or, at the least, that the claims of Brill's patents must be limited to the specific form of hangers disclosed in said patents, and when so limited, in view of the prior art, the defendant's structure does not infringe the claims in suit under Brill's patent. We do not intend to discuss these propositions, nor state the grounds which incline us to adopt these conclusions.

In this protracted litigation we are convinced that the claims of comity should be regarded, and we should respect the decision of the circuit court of appeals of the third circuit, which decided this controversy adversely to the appellant here. We strongly incline to agree with the opinion of Judge Acheson speaking for that tribunal. The court below followed that opinion and decision. The circuit court of appeals of the second circuit appears to have followed it. Comity applies only to questions which have been actually decided and which arose under the same facts. The able and ingenious argument of appellants' counsel has failed to convince us that there is a material difference between the case we here review and that determined by the circuit court of appeals of the third circuit. The real parties to each litigation are the same, the real questions involved are the same; the difference in witnesses and in testimony are not enough to vary the conclusion reached by

that court. The additional references and the testimony of Freeman and Sanders are persuasive. As the Supreme Court has said in *Mast, F. & Co.* v. *Stover Mfg. Co.* 177 U. S. 485, 489, 44 L. ed. 856, 858, 20 Sup. Ct. Rep. 708.

The obligation to follow the decisions of other courts in patent cases of course increases in proportion to the number of courts which have passed upon the question; and the concordance of opinion may have been so general as to become a controlling authority. So, too, if a prior adjudication has followed a final hearing upon pleadings and proofs,—especially after a protracted litigation,—greater weight should be given to it than if it were made upon a motion for a preliminary injunction. These are substantially the views embodied in a number of well-considered cases in the circuit courts and circuit courts of appeals. *Macbeth* v. *Gillinder,* 54 Fed. 169; *Electric Mfg. Co.* v. *Edison Electric Light Co.,* 10 C. C. A. 106, 18 U. S. App. 637, 61 Fed. 834; *Edison Electric Light Co.* v. *Beacon Vacuum Pump & Electrical Co.* 54 Fed. 678, and cases cited; *Beach* v. *Hobbs,* 82 Fed. 916, 34 C. C. A. 248, 63 U. S. App. 626, 92 Fed. 146. See also *Newall* v. *Wilson,* 2 De G. M. & G. 282."

The appellants' additional evidence here that the truck in suit is the highest development of the art does not answer the argument of Judge Acheson. Uebelacker, the patentee of the patent under which the defendant justifies, it is true, testified to what may appear attempted piracy of the Brill construction, although the witness qualifies his statement and says he did not intend to copy it. But the circuit court of appeals concluded that at the time the appellee's structure was adopted it had the absolute right to make, use, and sell the truck designed by Uebelacker for the Peckham Motor Truck & Wheel Company, and the witness further testified that he was familiar with the Thyng and Haskin's patents, and did not regard the spring arrangement of the Brill truck, therefore, as anything new in the art. It is true that the relative importance of different patents relied on in the New Jersey case and in this to show that the appellants' patents are invalid or not infringed is differently valued in the two different suits. It appears to us that the

New Jersey court has found enough to justify its conclusion that the patentee Brill made a substitution which may have secured better result but which did not involve invention; nor, in our opinion, did that court err in holding that the disclaimer we before quoted is a solemn confession of priority in favor of Brill and Curwen, or in concluding that the only difference between the combination shown and claimed by Brill and Curwen and the principal combination of the claims involved in that suit (as in this) was that the latter claims called for a semi-elliptic spring for connecting the links, instead of equalizing bars; nor did the court err, in our opinion, in saying that it was old to use semi-elliptic springs for connecting the links. If patentable invention is lacking in the claims of the parent patent, it appears that the claims of the second patent must fall within the claims of the first patent, when broadly construed. At least, if claims 14 and 15 are valid when specifically construed, the appellee does not appear to have infringed these claims.

We are convinced that it was proper and expedient for the court below to apply the doctrine of comity to this case, and that the decree of the court below, dismissing the bill of complaint in this cause, should be affirmed, with costs, and it is so ordered.

PER CURIAM:
After the former submission of this cause, a conclusion was reached, but Mr. Justice McComas, to whom the preparation of the opinion had been assigned, died before it could be delivered and the decreed entered. The case has been resubmitted, by stipulation of the parties, to the two remaining members of the court. Their views remaining unchanged, the opinion prepared by Mr. Justice McComas is adopted and filed as the opinion of the court. In accordance therewith, the decree will be affirmed, with costs. It is so ordered by the court.

*Affirmed.*

An appeal to the Supreme Court of the United States was prayed and allowed January 20, 1908.