THACHER v. MAYOR AND CITY COUNCIL OF BALTIMORE.

(District Court, D. Maryland. January 28, 1915.)

1. PATENTS ⬤⟿73—"ANTICIPATION"—PRIOR PATENTS.

A patent is not "anticipated" by a prior patent, where the invention is carried back to a date before the application for such prior patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 118; Dec. Dig. ⬤⟿73.

For other definitions, see Words and Phrases, First and Second Series, Anticipation.]

2. PATENTS ⬤⟿22—INFRINGEMENT—EQUIVALENT PARTS.

However limited the range of equivalents to which a patent is entitled, that equivalency must be commensurate with the extent of the invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 1, 7, 8; Dec. Dig. ⬤⟿22.]

3. PATENTS ⬤⟿328 — VALIDITY AND INFRINGEMENT — REINFORCED CONCRETE ARCH.

The Thacher patent, No. 617,615, for the combination with abutments and a concrete arch spanning the intervening space of a series of independent metal bars in pairs, one bar of each pair above the other respectively near the intrados and extrados of the arch and one of which at least extends well into the abutments, was not anticipated and discloses invention. Also, *held* infringed by a structure in which in some cases the arches rest on piers instead of abutments.

4. PATENTS ⬤⟿13—"MANUFACTURE"—ARCH.

An arch of a bridge or like structure is a "manufacture," within the meaning of the patent law.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 11, 12; Dec. Dig. ⬤⟿13.

For other definitions, see Words and Phrases, First and Second Series, Manufacture.]

In Equity. Suit by Edwin Thacher against the Mayor and City Council of Baltimore. On final hearing. Decree for complainant.

George M. Brady, of Baltimore, Md., and Jones, Addington, Ames & Seibold and Frank H. Drury, all of Chicago, Ill., for plaintiff.

S. S. Field, City Sol., and Alexander Preston, Deputy City Sol., both of Baltimore, Md., for defendant.

ROSE, District Judge. The plaintiff sues the mayor and city council of Baltimore, hereinafter called the city, for an infringement of the first and third claims of letters patent No. 617,615, issued to him January 10, 1899. According to the patent, the invention relates to:

"Concrete arches for bridges or vault covering or for spanning openings for building construction; and it has for its object an improved arch structure in which iron or steel bars are imbedded in concrete near the outer and inner surfaces of the arch in such a manner as to assist the concrete in resisting the thrusts and bending moments to which the arch is subjected."

The first claim is for:

"The combination with abutments and a concrete arch spanning the intervening space of a series of metal bars in pairs, one bar of each pair above the other near the intrados and the extrados of the arch and extending well into the abutments, each bar of a pair being independent of the other, substantially as described."

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The third claim is identical with the first, except that it requires only one bar of each pair to extend well into the abutments.

The defenses are nonvalidity and noninfringement. A number of prior American and foreign patents have been cited. All of them which are seriously relied upon were considered by the Patent Office before the claims were passed to issue. It is unnecessary to review them in detail. Both sides agree that one Monier, a Frenchman, was the pioneer in the art. His original purpose was modest enough. He wished to cover metal boxes and basins for flowers and plants with cement, his idea apparently being to preserve the metal and perhaps to give it a more ornamental appearance. His patent was issued in 1867. He soon found that his invention could advantageously be put to many more uses than he had at first anticipated. From time to time he applied for and obtained those certificates of addition for which the French law provides. By one of them granted in 1873 his invention was made applicable to bridges. In all the forms of his invention and all the purposes to which he sought to apply it, a metallic grillage remained an essential element of the completed structure. Many other inventors followed him into the field in which he had been the pioneer. A number of different ways of combining metal and concrete were suggested by them. Some of them pointed out that their methods of making the combination were specially adapted to arch construction. The patent in suit, it will be noted, is limited to bars, of which one of each pair shall be near the intrados and the other the extrados of the arch. The advantage of this arrangement is clearly explained by plaintiff's expert. He shows that the metallic reinforcement is the more valuable the further it is away from the neutral axis of the arch and the nearer it is to the upper and lower surfaces thereof—that is to say, what in technical language the patentee calls the extrados and the intrados—provided, always, that the metal is sufficiently embodied in the concrete to be thoroughly incorporated therein.

As the very competent experts and engineers examined on behalf of the city did not question this theory, it may be accepted as true.

[1] In recognizing this principle and turning it to practical use, the plaintiff did something which most of the patents cited against him did not. There is one, 583,464 June 1, 1897, to Von Emperger, which embodies this idea. Von Emperger's patent was issued before that of the plaintiff upon an application which antedated his by five months. The Patent Office cited it against plaintiff, who thereupon filed affidavits carrying back his invention to a period prior to the date of Von Emperger's application. Under office rule 75 the patent then issued to him. At the hearing in this court he put in evidence the file wrapper showing these facts. Defendant did not offer any testimony to controvert the truth of the affidavits upon which the patent issued. For the purposes of this case his invention must be held prior to Von Emperger's. Deering v. Winona Harvester Works, 155 U. S. 298, 15 Sup. Ct. 118, 39 L. Ed. 153.

There are other patents in which the metallic reinforcement is on or near the surface of the arch, but it is not in the form of bars in pairs each independent of the other arranged one above the other, and at least one of each pair extending well into the abutments. Each one

of these features peculiar to plaintiff's device is said in combination with the others to have practical merit and utility. It is quite possible to argue that there were so many known forms of reinforced concrete arch constructions before plaintiff devised his that no invention was required to do what he did. On the other hand, the grant of the patent raises a presumption of invention. In this case the presumption is supported by evidence that the invention went largely into use, and that until 1910 there was no serious attempt to infringe upon the exclusive rights of the patentee therein. It is true that down about until that time the company in which plaintiff was interested constructed 90 per cent. of the larger reinforced concrete bridges erected in this country. The evidence of the extensive use of the invention is therefore not as persuasive as to its merits as it might have been, had the business of the bridge building been more generally distributed. There is testimony, however, that others did pay handsome royalties for licenses to build their bridges in the manner shown in the patent in suit. There was absolutely no testimony to the contrary, although the city examined an expert witness of large experience in concrete arch construction as well as the very eminent chief engineer of its sewerage system. The latter frankly admitted that he could not recollect having seen or heard of any bridge or arch constructed in accordance with plaintiff's design before the issue of the patent in suit.

Under the circumstances, I am not prepared to hold that the claims in suit are void either because of direct anticipation, or because, in view of the state of the prior art, they do not disclose invention.

[2] Has the city infringed? It says that the art to which the patent in suit relates was even at the time of the invention described therein crowded, and that its claims must be strictly construed. For the purposes of this case so much may be properly conceded; but, however limited the range of equivalents to which the patent is entitled, that equivalency must be commensurate with the extent of the invention. Schiebel Toy & Novelty Co. v. Clark, 217 Fed. 768, 133 C. C. A. 490.

Distinctions which do not differentiate the alleged infringing structure from the invention described and claimed in the patent in suit are immaterial.

[3] The city points out three respects in which its structure is unlike that shown in the patent. These are that upon its arches rest no spandrel filling, that the upper of each pair of its bars is not in precisely the same vertical plane as the lower, and that its construction consists of a series of arches one end of each of which in all cases, and both ends in most, are supported by piers rather than by abutments. Of these differences in their order.

One of the drawings of the patent shows an arch with a spandrel filling. The patent says that the abutment, the arch, and the spandrel filling there shown constitute the complete structure. In defendant's construction there is no spandrel filling, the roadway being supported on metallic posts which in their turn are sustained by the piers and arches. There is not a word about spandrel filling in the claims. It is utterly immaterial, for any purpose connected with the construction in suit, whether there shall be any or not. Plaintiff's patent would be infringed

the moment the arch was constructed, although neither spandrel filling nor any other covering was ever placed upon it.

That in the city's arches the upper bar of each pair is not vertically directly over the lower is true. In some cases it is an inch and a half out of the vertical lines. The city's engineer says that there was no purpose in so arranging the bars. It was a mere accident in the design of construction. It is not suggested that such a slight departure from the form shown in the patent makes any real difference. It should be remembered that the second claim is not in suit. That does require, as the first and third do not, that one bar of each pair shall be vertically above the other. No opinion is, of course, here intimated as to whether an infringement of even the second claim could be avoided by a change of the arrangement of the bars so slight in fact as to be unimportant in effect.

The city constructed a series of spans and arches which supported a viaduct of considerable length. It followed that in all cases at least one end of each arch was supported by what is technically a pier rather than an abutment. It is perfectly obvious, however, that the word "abutment," as used by the patentee, was intended to include both abutments and piers. If the structure calls for only one span, there will be one arch supported by two abutments. If there be more than one arch, the ends of some of them will be supported by piers. After a pier has been erected, it can be changed into an abutment, or an abutment into a pier.

[4] No question has been raised but that an arch is a manufacture within the meaning of the patent law. In the absence of an express decision of the Supreme Court on the question, it must be held concluded by the more recent construction of the word "manufacture" by various Circuit Courts of Appeals. Crier v. Innes, 170 Fed. 324, 95 C. C. A. 508; Riter-Conley Mfg. Co. v. Aiken, 203 Fed. 699, 121 C. C. A. 655; International Mausoleum Co. v. Sievert, 213 Fed. 229, 129 C. C. A. 569.

The plaintiff is therefore entitled to a decree for an injunction and an accounting. The injunction, however, will be limited to forbidding future infringements. It will do the plaintiff no good to decree the destruction of the present structure, and the city much useless harm.

A decree in accordance with this opinion may be submitted.