### THACHER v. TRANSIT CONST. CO.

(Circuit Court of Appeals, Second Circuit. June 7, 1916.)

No. 290.

1. PATENTS ⊜⟿324(5)—SUITS FOR INFRINGEMENT—REVIEW—QUESTIONS PRESENTED.

Where defendant did not appeal from that portion of a decree adjudging a patent valid, the matter will not be reviewed on complainant's appeal from a finding that there was no infringement, except as may be necessary in interpreting the claims.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 606; Dec. Dig. ⊜⟿324(5).]

2. PATENTS ⊜⟿157(2)—CONSTRUCTION—CLAIMS.

If possible, the claims of a patent should be construed so as to uphold and not to destroy it.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 231; Dec. Dig. ⊜⟿157(2).]

3. PATENTS ⊜⟿168(2)—PROCEEDINGS IN PATENT OFFICE—CONCLUSIVENESS.

Where the patent office disallowed a patentee's broadest claims and to obtain the patent he limited his claims, he cannot thereafter assert that his invention included such broad claims.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 244; Dec. Dig. ⊜⟿168(2).]

4. PATENTS ⊜⟿328—CONSTRUCTION—IMPROVEMENT IN CONCRETE ARCHES.

The Thacher patent, No. 617,615, for an improvement in concrete arches, consisting of a combination with abutments and a concrete arch spanning the intervening space, of a series of metal bars, in pairs, each bar of a pair being independent of the other, is valid, but is limited to a structure in which the bars are not members of a truss or built-up metallic girder, and, as so construed, *held* not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Bill by Edwin Thacher against the Transit Construction Company. From a decree (228 Fed. 905), dismissing the bill for want of infringement, complainant appeals. Affirmed.

A. A. Thomas, of New York City, for appellant.

E. C. Seward, of New York City (Brown & Seward and Wm. McK. Barber, all of New York City, of counsel), for appellee.

Before COXE and WARD, Circuit Judges, and CHATFIELD, District Judge.

---

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CHATFIELD, District Judge. This action involves a charge of infringement of claims 1 and 3 of patent No. 617,615, granted to Edwin Thacher, the plaintiff-appellant, on January 10, 1899, upon an application filed October 16, 1896. Claim 1 sufficiently shows the question presented and reads as follows:

"1. The combination with abutments, and a concrete arch spanning the intervening space, of a series of metal bars, in pairs, one bar of each pair above the other, near the intrados and extrados of the arch, and extending well into the abutments, each bar of a pair being independent of the other, substantially as described."

The District Court found the patent valid, following a decision by Judge Rose (Thacher v. Mayor, etc., of Baltimore [D. C.] 219 Fed. 909), in which the claims of the patent were held both valid and infringed.

On the question of infringement, however, the District Court, in the present action, reached the conclusion that the structure of the defendant, which consists of a series of concrete arches to support the Ashokan bridge of the aqueduct for the city of New York, did not include pairs of bars or rods of which one bar of each pair was "independent of the other," in the sense in which those words were used in the claims of the patent. It therefore held the claims not infringed and, in so doing, stated that the structure under consideration by Judge Rose was substantially the same as that described in the patent. The invention claimed in this patent "relates to concrete arches for bridges or vault-covering or for spanning openings in building construction."

The file wrapper shows, among the citations by the Patent Office, a patent, No. 545,301, granted August 27, 1895, to one Milliken, which was not pleaded as an anticipation, but was the only patent of the prior art presented in the record or discussed in the opinion of the court below. This Milliken patent provided a method for the construction of arches, partitions, floor, etc., and evidently contemplated the use of I-bars or iron beams from which the concrete arch should spring. This arch was to be made by concrete poured around and through wire netting or corrugated metal, so woven or bent as to connect and inclose longitudinal strengthening bars, which bars were to be placed at different levels in the arch, and were to follow the lines of curvature according to their location. These bars were to be interwoven in or fastened to the wire mesh or corrugated metal, and were to be as long as the total arc of the span. When applied to a bridge it can be seen that no such mass of rods, corrugated plates, or wire mesh could be evenly bent into an arch of varying thickness. The larger the span the more impossible would be the construction, and no machinery could make the metallic arch in one piece for transportation or bend it in shape if first assembled for the entire length.

In this sense the Milliken patent is impracticable and could not be considered as an anticipation of the Thacher patent. This Milliken patent was not mentioned by Judge Rose in the Baltimore Case, supra. In the court below, however, the Milliken patent was considered in so far as it disclosed a concrete arch with upper and lower bars im-

bedded in the concrete in pàirs, each bar having the same relative position with respect to the upper. and lower faces of the arch as the bars of each pair shown in the Thacher patent.

[1] The defendant has not appealed from the finding of the court that the patent is valid, and it is necessary to consider only the question of infringement. But the plaintiff-appellant has added to its brief a copy of the Von Emperger patent No. 583,464, allowed June 1, 1897, upon an application filed May 19, 1896. This was held by Judge Rose in the Baltimore Case to have been antedated by Thacher, and the defendant in this case has not questioned the action of the Patent Office in allowing Thacher his patent as a prior invention to Von Emperger. Hence Von Emperger is not available as an anticipation nor as a part of the prior art.

[2-4] The Von Emperger patent shows the use of ribs or longitudinal strengthening rods in pairs, of which each pair is "reinforced by distance rods between said ribs and by diagonals connecting the two adjacent pairs of ribs." In some of the drawings of the Von Emperger patent, it is evident that the inventor was contemplating merely the formation of a truss or skeleton structure, which could be erected on the spot, and need not be completed before the concrete was poured around the lower part, in place of using a solid iron beam or solid truss sufficient to span the entire arch. But Von Emperger relies upon the idea of strengthening the arch by the use of a pair of rods substantially in a vertical plane, of which one shall follow the curvature of the lower surface and the other the curvature of the upper surface, and in which pair connection in the vertical plane may be merely by distance rods to keep the strengthening bars in shape, or in place until the concrete can harden around them. In this, so far as the mere presence of a pair of bars is concerned, Von Emperger evidently had in mind the same idea as Thacher, but he did not claim this alone as invention, nor does Von Emperger seem to rely upon the mere presence of the pair of strengthening bars without reference to their connection with the other parts of what he in effect treats as a girder. In this way his patent is exactly the same as the Milliken patent, in that it has rods present which correspond in position and in material to the rods called for by the Thacher patent, but which do not perform the same functions in the same "independent" way.

The specifications in the original Thacher application show that the patentee was seeking to imbed his bars firmly, and that he contemplated for this purpose the use of bars with extensions or projections in order to allow better holding by the concrete. He also contemplated the possibility of using jointed or extension bars, so that they might be put in place in smaller sections, and that the lower bar or the lower part of each bar could be covered with concrete first. He planned to have one of the bars near what is called the extrados of the arch and the other near the intrados, thus having one follow the curve of the upper surface and the other the curve of the lower surface. He contemplated and has always used some means of holding the bars in position until the concrete was completely around them, and these means can be left in the concrete or removed as may be most con-

venient. But in all of this structure the patentee had in mind the idea which was not claimed by Milliken (but was recognized by Von Emperger) of using two single rods or bars, which should not in any way obtain power to resist a strain or stress by direct trusslike connection with the other bar of the pair. This proved to be the ultimate patentable idea in the Thacher application, and in this sense the patent seems to have properly been held valid.

It has been necessary to state these matters, inasmuch as the District Court failed to state, so as to avoid criticism by the appellant, what seems to be its intended finding upon the question of infringement.

The plaintiff who acted as his own expert testified that the strengthening bars are subjected to internal stress by the application of a load upon the concrete, and that this stress is caused by the strain which is resisted longitudinally of the bar. The bars thus add to the strength of the concrete in its ability to resist those components of any load or force tending to distort the arch, but which do not waste themselves as a mere shearing or crushing strain normal to the face of the arch. The plaintiff points out that when the two bars of a pair are imbedded in the concrete, and when the concrete has hardened, the bars and the concrete form a compact and complete whole, which is integral in the sense that neither of the bars can move in the concrete. There can be no longitudinal motion at all, and no distortion or twisting, unless the entire body of the concrete is broken or cracked. In this sense of course the Thacher bars are connected and are not "independent" of each other in resisting any shearing strain which can be transmitted by the concrete so as to be exerted against both bars and against the concrete as well.

The plaintiff therefore contends that the words in the claims of the patent "independent of the other" mean independent in action. In other words, he claims that each of these bars exerts whatever effect it has upon the concrete in which it is imbedded independently of whatever action may be exerted by the other bar.

The District Court, in holding that the defendant's structure did not infringe, made the statement that the defendant's upper and lower arched bars were in no sense "independent" of each other. The court says that they are "physically and mechanically connected to each other by exceedingly strong iron fasteners." The court then says that the transverse fasteners between the upper and lower arched bars "appear to be considerably stronger and heavier than the arched bars themselves," and that "the cross-frames are directly bolted to the angle iron cross-frames by heavy bolts."

It appears from the drawings that these cross-frames are trusslike structures extending transversely to the roadway or floor of the arch, and holding in place each of the longitudinal arched bars. They are firmly fastened to the arched bars and give rigidity against transverse strains, but also act as a definite connection between the upper and lower of each pair of arched bars.

In addition, as found by the District Judge, so-called stirrups or hooks are fastened by bolts to bars crossing from the upper and lower

strengthening rods in one pair to those in the next pair. The cross-bars are firmly bound to the rods by wire fastenings.

The defendant's structure enjoys the same advance as the Von Emperger patent and as described by the patentee in suit, in that it is possible to place the lower bar in position, fill in the concrete, and then add the upper bars, instead of having to fill in the concrete under and around the projecting surfaces of a solid truss or beam.

In the same way convenience in erecting upon the spot from small members instead of placing in position a heavy trusslike structure, is obtained by the patentee and also by the method used by the defendant.

But it would appear that the District Judge was right in his finding that the particular construction used by the defendant is not that of the patent. The plaintiff urges that mere vertical or radial connection between the upper and lower arched bars serves no purpose other than to definitely locate the position of these arched bars and to take the place of false work in their erection. He points out the difference between a member constituting a truss with triangular bracing and the parallel tieing together of two horizontal rods, which even when so tied would not support their own weight, beyond the strength of the joints of the structure if these joints be fixed and not movable. But he overlooks in some of the Von Emperger constructions, and also in the defendant's structure, the fact that two bars, one near the extrados and the other near the intrados of the arch, firmly fastened together by rods of sufficient stiffness and arranged radially with cross-bars or plates imbedded in the concrete, and heavy enough to resist distortion, would of themselves form a truss, and are not independent in action of each other.

If the advantage of this form of construction would justify the extra expense for material, then no idea shown in the patent in suit would be used except the mere presence of a pair of bars in the relative positions in which they were planned by the patentee and in which they occur in the Milliken patent. But unlike those described in the Thacher patent, they would not be "independent" of each other mechanically nor in action, and would not be within the claims of this patent.

It may be assumed that the bars of the Thacher patent when imbedded in concrete are thereby "physically and mechanically" connected to form a girder of concrete and iron. The immobility of the bars does not take away their "independent" action against internal stress. But the patentee plainly meant to imply a definite limitation to "independent" as distinguished from combined resistance to that stress.

The doctrine that such meaning should be given the claims as to uphold and not destroy the validity of the patent (when two meanings are possible), Gaisman v. Gallert (C. C.) 105 Fed. 955, and National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 45 C. C. A. 544, does not require a construction of the word "independent" which shall include all forms of construction for resisting longitudinal stress and exclude only normal or shearing strains.

The word "independent" even when meaning "independent in ac-

tion" is limited to the meaning *independent of each other,* or *independent of reciprocal action* except as affected by the concrete.

Von Emperger recognized (as contended by Thacher) that "the use of metal in the core of a vault or arch is useless as only those portions of the ribs are called into action which are located near the intrados and extrados of the arch," and that "the reinforcing ribs should follow the shape of the arch," but he does not seem to mean that each bar is unaffected in its internal resistance by its metallic connection with other bars entering into its ability to resist and transmit its own internal stress.

The specifications for the defendant's structure called for the fastening in position of the steel reinforcement "by cross-frames and stirrups or other means, so as to prevent its becoming displaced during the placing of the concrete."

Under this an infringing structure might have been furnished, but the case at bar depends upon the precise form used, and not upon some other form which might have fulfilled the contract. The patent has now expired, and the patentee as his own expert looks upon the meaning of the patent from the standpoint of the broadest interpretaion which his language might allow. But he cannot enlarge what the Patent Office granted, and what he accepted in obtaining favorable action. Goodwin Film & Camera Co. v. Eastman Kodak Co. (D. C.) 207 Fed. 351, at page 357; National Tube Co. v. Mark, 216 Fed. 507, at page 522, 133 C. C. A. 13.

The District Judge thought the claims narrower as granted than those originally submitted. In some senses they seem to be broader in scope than they would have been construed upon the earlier form of claim, but a recognition of this fact does not give the patentee the right to claim all the ideas which he sought to urge upon the Patent Office and which they clearly and correctly considered anticipated by the patents of the prior art. The use of strengthening rods in a concrete arch near the extrados and intrados was shown in Milliken and other patents, and the patentee sought to get away from the idea of constructing and imbedding a metallic truss or girder by using separate and independent rods which should form the truss or girder only when the concrete had hardened. But he did not thereby obtain a claim which can be held to include as "independent" those rods which, while to a great extent independent, are yet in nature members of a truss or built-up metallic girder. The defendant's structure falls in the latter class.

The decision that the patent is valid, but not infringed, will be affirmed.