## THACHER v. INHABITANTS OF TOWN OF FALMOUTH.

(Circuit Court of Appeals, First Circuit. April 6, 1917.)

No. 1235.

1. PATENTS ⬉327—SUITS FOR INFRINGEMENT—EFFECT OF PRIOR DECISIONS..
      The decision of a Circuit Court of Appeals sustaining the validity of a patent under the ordinary rule will be followed in other circuits where substantially the same state of facts is presented, but where there is new evidence it will be considered, and the court will exercise its independent judgment.

      [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 620–625.]

2. PATENTS ⬉328—INVENTION—CONCRETE ARCH.
      The Thacher patent, No. 617,615, for a reinforced concrete arch, is void for lack of patentable invention, in view of the prior art.

Appeal from the District Court of the United States for the District of Maine; Clarence Hale, Judge.

Suit in equity by Edwin Thacher against the Inhabitants of the Town of Falmouth. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 235 Fed. 151.

A. Alexander Thomas, of New York City, for appellant.
Solomon W. Bates, of Portland, Me., for appellee.

Before DODGE and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

DODGE, Circuit Judge. This bill charges the defendant town with infringement of United States patent 617,615, issued to the plaintiff January 10, 1899, for an improvement in concrete arches. The bill

was filed February 6, 1915. The patent has since expired, January 10, 1916. Of the three claims, only the first and third are alleged to have been infringed. Both are for—

"the combination with abutments, and a concrete arch spanning the intervening space, of a series of metal bars in pairs, one bar of each pair above the other, near the intrados and extrados of the arch."

Claim 1 goes on to specify, with reference to said bars:

"And extending well into the abutments, each pair being independent of the other, substantially as described."

Claim 3 substitutes for this:

"Each bar of the pair being independent of the other, and one bar of each pair extending well into the abutment, substantially as described."

The District Court has held the patent invalid, being satisfied that the invention disclosed had been described in a printed publication in this and in a foreign country (Austria) before the plaintiff's alleged invention or discovery thereof. The printed publication referred to is the official journal ("Zeitschrift") of the Austrian Society of Engineers and Architects, published in May, 1895. Having adopted the above conclusion, the District Court did not examine the question whether or not the patent, if valid, is infringed by the defendant's structure.

[1] From this decision, rendered June 27, 1916, the present appeal is taken. The same patent had been previously in litigation in other circuits, and the learned District Judge has referred in his opinion to all the decisions theretofore made regarding it. In the earliest of these cases, Thacher v. Mayor, etc. (D. C.) 219 Fed. 909, the validity of the patent was unmistakably in controversy. The District Court in Maryland held it valid January 28, 1915; and on appeal the decision was affirmed by the Court of Appeals for the Fourth Circuit, which adopted Judge Rose's reasoning without further opinion February 2, 1916. 230 Fed. 1022, 144 C. C. A. 659.

In Thacher v. Transit, etc., Co. (D. C.) 228 Fed. 905, the validity of the patent was in issue, but does not appear to have been seriously controverted. Judge Thomas, in the New York Southern district, dismissed the bill, finding no infringement proved (January 8, 1916); a result affirmed by the Court of Appeals for the Second Circuit June 7, 1916. The appeal, however, as the opinion states, involved the question of validity only so far as necessary in interpreting the claims for the purposes of the question of infringement. 234 Fed. 640, 148 C. C. A. 406.

The conclusion below against the validity of the patent was adopted, as appears from the opinion of the District Court, notwithstanding the above prior decisions wherein the patent had been adjudged or assumed to be valid, in view of the fact that in none of the cases so decided had the above anticipatory publication been offered in evidence or considered by the court.

Since the decision of the District Court in this case, the District Court in the Iowa Southern district has held the same patent invalid

because anticipated by the prior United States patent to Von Emperger, No. 583,464, June 1, 1897. Thacher v. Board, etc. (D. C.) 235 Fed. 734 (September 12, 1916). In Thacher v. Mayor, etc., cited above, the defendant offering no evidence to controvert affidavits whereby the plaintiff had, in the Patent Office, carried back his alleged invention to a date prior to that of Von Emperger's application, the court was obliged to hold said invention prior to Von Emperger's for the purposes of the case, though it regarded his patent as embodying the plaintiff's patentable idea. On the evidence heard by the court in Iowa, however, in Thacher v. Board, etc., the court found no sufficient proof of the priority asserted by the plaintiff over Von Emperger.

The Iowa decision makes no reference to the "Zeitschrift" publication of 1895, held by the District Court in this case to have anticipated the plaintiff's patent. And in this case, although the Von Emperger patent is one of those alleged as anticipations in the answer, it was not offered in evidence, and forms no part of the record before us, though it was cited against Thacher's application in the Patent Office proceedings thereon, as shown by the file wrapper which the record includes. It is fully described and discussed in the opinion of the Court of Appeals in the Second Circuit in Thacher v. Transit, etc., Co., 234 Fed. 640, 642, 148 C. C. A. 406, an opinion, however, relating, not to the question of validity, but to the question of infringement, which question alone was involved in the appeal. Although the record before us does not include Von Emperger's patent, it does include a paper by him, published in the Transactions of the American Society of Civil Engineers for April, 1894, three years before the issue of his patent, put in evidence by the defendant, and referred to in the opinion below, whereof no mention is found in any of the above decisions regarding the patent in suit in other circuits.

If the above decision upon the contested issue of validity by the Court of Appeals for the Fourth Circuit in Thacher v. Mayor, etc., 234 Fed. 640, 148 C. C. A. 406, had been based upon substantially the same state of facts as that presented in the present case, it would no doubt have to be followed in this circuit, according to the ordinary rule applied by this court in Beach v. Hobbs, 92 Fed. 146, 34 C. C. A. 248; Hatch, etc., Co. v. Electric Co., 100 Fed. 975, 41 C. C. A. 133; Westinghouse, etc., Co. v. Stanley, etc., Co., 133 Fed. 167, 68 C. C. A. 523: Gill v. Austin, 157 Fed. 234, 84 C. C. A. 677; Kinney v. Conant, 166 Fed. 720, 92 C. C. A. 410; Harmon v. U. S., 223 Fed. 425, 139 C. C. A. 19. But it is clear that the learned judge of the District Court fully recognized the existence of such a rule and its applicability in cases where the proofs were the same, and that he regarded the state of the proofs before him so substantially different from that upon which, in the previous decisions, the patent had been adjudged or assumed to be valid, as to justify treating the rule as inapplicable in the case before him. And we are satisfied that this case requires consideration of evidence not brought to the attention of the Patent Office or the court in any case where the validity of the patent was in controversy before a Court of Appeals. Under such circumstances, if the weight of such evidence, in connection with

the other evidence before us, is sufficiently definite and controlling against the validity of the patent, we are justified in sustaining the decision below, notwithstanding the fact that it is at variance with the previous. decisions elsewhere.

Apart from any question of direct anticipation, the proposition that the claims in suit are to be regarded as disclosing invention, in view of the prior art, finds no very strong support in any of the previous decisions upon the patent. Judge Rose thought it—

"quite possible to argue that there were so many known forms of reinforced concrete arch constructions before plaintiff devised his that no invention was required to do what he did." (D. C.) 219 Fed. 911.

It was the presumption of invention from the grant of the patent, supported by proof that the invention went largely into use, without any serious attempt to infringe the plaintiff's exclusive rights until 1910, and by proof of royalties paid for licenses to use the patented construction, that were held by him to prevent the conclusion that no invention was disclosed, although, as his opinion points out, the proof of extensive use was not so persuasive as it might have been, because competition with the plaintiff's company in the construction of reinforced concrete bridges has been comparatively insignificant. In the present case it has also appeared from the plaintiff's testimony that he has had another patent, covering a particular form of bar, which this defendant is not charged with infringing, and such a patent may well also have contributed to the commercial success of his company in concrete arch bridge construction.

The plaintiff was regarded by Judge Rose as having been the first to recognize and turn to practical use the principle that the metallic reinforcement of a concrete arch is the more valuable the further it is away from the neutral axis, and the nearer it is to the extrados and intrados, i. e., the upper and lower surfaces thereof, and the first to arrange a metallic reinforcement, so placed with reference to the extrados and intrados, in the form of bars in pairs, one above the other, but each independent of the other, and at least one of each pair extending well into the abutments. (D. C.) 219 Fed. 910, 911. So, also, according to the opinion of the Court of Appeals in the Second Circuit, the "ultimate patentable idea" in the plaintiff's application was—

"the idea of using two single rods or bars, which should not in any way obtain power to resist a strain or stress by direct trusslike connection with the other bar of a pair."

This idea the court thought to have been recognized by Von Emperger in his patent of 1897, but not claimed by him as in itself an invention, without reference to the connection of his bars composing each pair with the other parts of what he in effect treated as a girder. 234 Fed. 642, 643, 148 C. C. A. 406.

In this case the plaintiff has testified on his own behalf, and his is the only expert testimony offered by him. From it we learn that he is a member of the American Society of Civil Engineers, knew Von Emperger, was familiar with his paper of 1894, and that said paper

was "what started him in the business." In said paper what is known as the Monier system of reinforcing concrete bridge arches by metallic grillage or network imbedded in the concrete is referred to, patented by Monier abroad as early as 1875. That in the Monier system only one wire netting on the intrados of the arch was at first used, but that the engineers soon became aware that this was not sufficient, and that two nettings had been thereafter used, one near to and parallel with the intrados, the other near to and parallel with the extrados, appears from statements made in said paper, as the plaintiff admitted. Reference to the Monier system is found in Judge Rose's opinion above cited (D. C.) 219 Fed. 910; also in the opinion of the District Judge in this case.

It further appears from the plaintiff's testimony that he was familiar, when he took out his patent, with constructions employing the Monier method of reinforcement as above; that in construction so reinforced the transverse wires are without effect upon the function or operation of the wires running longitudinally; and that his patented system, as compared with such construction, resolves itself into using no transverse bars or wires at all. According to his testimony, the distinction between the Monier system and his lies in the fact that the former uses a network of wires or small bars, while his uses large bars only, having great stiffness in themselves, needing no side support to make them effective, and constituting the only effective part of the system. Its advantages over Monier network were claimed by him to be that such network as used in bridges had been of fine mesh, varying from 2½ to 4 inches, and therefore requiring, as his system did not, the use of expensive mortar, instead of ordinary concrete, and being also in itself too expensive for economical use.

[2] We are satisfied by the evidence before us that before the plaintiff applied for his patent there had been developed from the Monier system of using metallic network of small bars or wires and of fine mesh to reinforce concrete bridge arches, as originally used, not only a method of placing such reinforcement near the intrados and also near the extrados of the arch, without metallic connection between, but also a method of employing for such reinforcement network of large mesh wherein longitudinal bars having stiffness in themselves were transversely connected by wires or bars having comparatively little size and strength, and serving only to keep the longitudinal bars in their proper positions. Knowledge that there had been such development had become generally available to persons skilled in the art, as we consider also established by the proofs.

A concrete arch, reinforced by metallic networks of the above description, placed as above with regard to the intrados and extrados, without metallic connection between the upper and lower network, and so arranged as to bring the stronger longitudinal bars of the upper above those of the lower network, would have for its reinforcement a series of metal bars in pairs, situated as in the claims of the patent, one bar of each pair above the other, and each bar of the pair independent of the other. If one or both bars of each pair extended well into the abutment of the arch, there would be embodied, so far as

we can see, everything covered by the claims in suit. This conclusion certainly finds strong support in the plaintiff's testimony that the transverse wires in such a network would be without effect so far as function or mode of operation are concerned.

A concrete arch reinforced in the above manner is, in our opinion, sufficiently shown and described in the "Zeitschrift" publication of May, 1895. We agree with the District Court that said publication disclosed in combination all the elements of the patent in suit, shows prior public knowledge of what is in substance the patentee's alleged improvement, and, in connection with what elsewhere appears in evidence, forbids the conclusion that he really discovered anything new. Nothing more definite is said in his patent about the kind of bars to be employed than that they are to be of such form that they can be readily and cheaply spliced, are to be such as can be manufactured at small cost, and can be readily bent to the curve of the arch; requirements, however, to which no express reference is found in the claims. We are unable, as was the District Court, to find inventive thought going beyond mere mechanical improvement involved in any advance made by the plaintiff upon the methods of concrete arch reinforcement whose use had become open to the public, as above. As is said in the opinion of the learned District Judge:

"Variations of size of wires do not constitute invention; widening the spaces between the bars, to enable an engineer to use coarse concrete, is not invention; dispensing, in whole or in part, with unessential parts, is not invention; producing economy in bridge building by consolidating numerous small bars into one large bar, cannot be said to be invention. These things are mechanical; they relate to good engineering; they do not disclose inventive thought."

Finding no error, therefore, in the conclusion of the District Court that the claims in suit are invalid, the patent not disclosing patentable invention, we have no occasion to consider the question of infringement by the defendant.

The decree of the District Court dismissing the bill is affirmed, and the appellee recovers its costs of appeal.